UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 06-21197-CIV-COOKE/BROWN

PETER GRANAT and BRETT
GRANAT,

       Plaintiffs,

v.

AXA EQUITABLE LIFE INSURANCE
COMPANY,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS II AND III

THIS CAUSE is before the Court upon Defendant Axa Equitable Life Insurance

Company's Motion to Dismiss Counts II and III (DE 8), filed June 8, 2006.  Plaintiffs Peter

Granat and Brett Granat filed their opposition on June 26, 2006.  Defendant Axa Equitable Life

Insurance Company filed its reply on July 3, 2006.  The Court finds, for the reasons set for

below, that Defendant Axa Equitable Life Insurance Company's Motion to Dismiss Counts II

and III should be granted.

### I.    BACKGROUND

Plaintiffs Peter Granat and Brett Granat ("Plaintiffs") filed this action on May 11, 2006.

Plaintiffs allege that they were the beneficiaries under a life insurance policy (the "Policy")

issued by Defendant Axa Equitable Life Insurance Company ("Defendant" or "Axa") to Jack

Granat (Plaintiffs' father).  Plaintiffs aver that the Policy insured the life of Jack Granat in the

sum of $3,000,000.00.  Plaintiffs allege that the Policy contained a grace period provision, which

-1-

established a 31 day grace period for payment of each premium, however, during the pendency of the grace period the insurance remained in effect.  Further, Plaintiffs contend that the Policy contained a lapse provision, which established that if a premium was not paid by the end of the grace period then the Policy would lapse as of the premium due date and all insurance coverage would end.

Plaintiffs aver that Jack Granat died sometime between the evening of September 25, 2005 and the evening of September 26, 2005.  Plaintiffs allege that at the time of Jack Granat's death a quarterly premium for the Policy remained unpaid.  Plaintiffs allege that the premium payment in question was due on August 25, 2005.  Plaintiffs contend, however, that at the time of Jack Granat's death the Policy remained in force pursuant to its grace period and lapse provisions.  Specifically, Plaintiffs assert that under the terms of the grace period and lapse provisions the Policy did not lapse until the end of Monday, September 26, 2005.  Plaintiff alleges that Jack Granat's death certificate states that his time of death was 10:50 pm on Monday, September 26, 2005.  But Plaintiffs argue that this time was set by the Miami-Dade Medical Examiner's Office in accordance with internal procedures which establishes time of death based upon the time that the body is discovered rather than the actual time of death.  Thus, Plaintiffs imply that the time of death listed on the death certificate is not accurate.  Moreover, Plaintiffs aver that a fair evaluation of the medical and forensic evidence establishes that Jack Granat's death occurred during the afternoon or evening of Sunday, September 25, 2005.

Plaintiffs contend that after Jack Granat's death Axa verbally represented to them that it would pay their claim under the Policy.  However, Plaintiffs allege that Axa denied their claim on November 22, 2005.  Plaintiffs aver that Axa's denial of the claim turns exclusively on its

contention that the Policy was no longer in force on September 26, 2005.  Plaintiffs brought the present action to recover the benefits allegedly due under Jack Granat's Policy.  In their Complaint, Plaintiffs assert claims for breach of contract, breach of fiduciary duty, and bad faith. Plaintiffs request compensatory damages, punitive damages, costs, and attorney fees in accordance with Florida Statute § 624.155(4).

## II.    PROCEDURAL POSTURE

Axa filed its Motion to Dismiss Counts II and III (DE 8) on June 8, 2006.  Plaintiffs filed their opposition on June 26, 2006.  Axa filed its reply on July 3, 2006.  Consequently, Axa's Motion to Dismiss Counts II and III is ripe for adjudication.

## III.    MOTION TO DISMISS STANDARD

"[W]hen considering a motion to dismiss, the court must accept all allegations of fact as true and should only dismiss when it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proven in support of his claim."  Solis-Ramirez v. U.S. Dept. of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985) (citing Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 65-66 (1978)).  See Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).  A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.  Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir.1993).  However, "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S.

41, 47-48 (1957).

**IV.   ANALYSIS**

In its Motion, Axa seeks to dismiss Count two of the Complaint on the grounds that it is barred under Florida's economic loss rule.  Additionally, Axa argues that Count three should be dismissed because an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved before a claim for bad faith in settlement negotiations can accrue.  The Court shall address each of these contentions in turn.

**A.   PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY IS BARRED PURSUANT TO FLORIDA'S ECONOMIC LOSS RULE**

Count two of the Complaint asserts a claim for breach of fiduciary duty, however, Axa contends that this claim is barred under Florida's Economic Loss Rule.  "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."  Indemnity Insur. Co. of North America v. American Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004).  In Florida, the economic loss doctrine bars recovery of economic losses,[1] through tort actions, for matters arising from a contract.  See id.  "The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort."  Id. In explaining the rationale behind the rule, the Florida Supreme Court stated:

> Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process.  A party to a contract who attempts to circumvent the contractual agreement by making a claim for

---

[1]"Economic losses are, simply put, disappointed economic expectations."  American Aviation, Inc., 891 So.2d at 536 n.1.

-4-

> economic loss in tort is, in effect, seeking to obtain a better bargain than originally made.  Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement.

Id. at 536-37.  Specifically, the economic loss rule provides that contract principles are more appropriate than tort principles for resolving economic losses without accompanying personal injury or damage to property other than that which is the subject of the contract.  See Behrman v. Allstate Ins. Co., 388 F.Supp.2d 1346, 1349 n.4 (S.D. Fla. 2005).  Thus, "[w]here the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action."  Id. (citing Eye Care Int'l Inc. v. Underhill, 92 F.Supp.2d 1310, 1315 (M.D.Fla.2000)).  See American Aviation, Inc., 891 So.2d at 537 ("courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract").

However, the economic loss rule does not bar all tort actions where there is privity of contract between the parties.  In HTP, Ltd., v. Lineas Aeras Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1997) the Florida Supreme Court stated "[w]here a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract" (citations omitted).  See e.g. Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 209 (Fla. Dist. Ct. App. 2003) (holding that the economic loss rule did not bar plaintiff's fraud and misrepresentation claims because those claims were distinct and independent from the contractual relationships between the parties).  Nevertheless, the Court must stress that this is only the case where the plaintiff can show that the tort claims are

-5-

extraneous to the breach of contract.  <u>Behrma</u>, 388 F.Supp.2d at 1349 (<u>citing</u> <u>Medalie v. FSC Securities Corp.</u>, 87 F.Supp.2d 1295, 1305 (S.D.Fla.2000)).

 In the present action, Plaintiffs contend that the Florida Supreme Court's decision in <u>Moransais v. Heathman</u>, 744 So.2d 973 (Fla. 1999) establishes that the economic loss rule does not apply to claims for breach of fiduciary duty.  The Court, however, disagrees.  In <u>Moransais</u>, the plaintiff, while in the process of buying a home, contracted with the defendants to perform a detailed inspection of the home.  In his complaint, the plaintiff alleged that in reliance upon the defendants' inspection, he purchased the home but soon thereafter discovered defects in the home that should have been discovered through the defendants' inspection.  The plaintiff brought an action against the defendants for breach of contract and professional negligence.  The complaint, however, did not allege bodily injury or property damage other than the undisclosed and undetected defects in the home.  The trial court dismissed the tort actions against the defendants pursuant to the economic loss doctrine.  On appeal, the Second District Court of Appeals affirmed the dismissal, but in light of the uncertainty surrounding the economic loss rule, the Second District directed a certified question to the Florida Supreme Court.  The certified question was as follows:

> WHEN THE ALLEGED DAMAGES ARE PURELY ECONOMIC, CAN THE PURCHASER OF A RESIDENCE, WHO CONTRACTS WITH AN ENGINEERING CORPORATION FOR A PRE-PURCHASE INSPECTION, MAINTAIN A PROFESSIONAL NEGLIGENCE ACTION AGAINST THE LICENSED ENGINEER WHO PERFORMED THE INSPECTION AS AN EMPLOYEE OF THE ENGINEERING CORPORATION ?

<u>Id</u>. at 974.

In response to the certified question, the Florida Supreme Court held that the economic loss rule did not bar claims for professional negligence where there are no personal injuries or property damage other than the defects in the home.  In reaching this conclusion, the court reasoned:

> While provisions of a contract may impact a legal dispute, including an action for professional services, the mere existence of such a contract should not serve per se to bar an action for professional malpractice.  Further, the mere existence of a contract between the professional services corporation and a consumer does not eliminate the professional obligation of the professional who actually renders the service to the consumer or the common law action that a consumer may have against the professional provider.  While the parties to a contract to provide a product may be able to protect themselves through contractual remedies, we do not believe the same may necessarily be true when professional services are sought and provided . . we conclude that the principles underlying the economic loss rule are insufficient to preclude an action for professional malpractice under the circumstances presented here.

Id. at 983.  It is apparent from the reasoning in Moransais that a key component to the holding was the fact that the action involved a claim for professional negligence.  The Florida Supreme Court recognized the unequal bargaining power inherent within the professional services industry and sought to provide additional protections and remedies for consumers.  Thus, the exception created in Moransais is based upon public policy concerns and limited to professional negligence claims.

This Court's interpretation of Moransais is buttressed by the Florida Supreme Court's discussion in Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So.2d 532, 536-44 (Fla. 2004).  In American Aviation, Inc., the Florida Supreme Court discussed the limited holding of Moransais when it attempted to clarify the scenarios where the economic loss rule will not bar a tort action despite privity of contract between the parties.  The court stated,

-7-

"[a]nother situation involves cases such as those alleging neglect in providing professional services, in which this Court has determined that public policy dictates that liability not be limited to the terms of the contract." American Aviation, Inc., 891 So.2d at 537 (citing Moransais, 744 So.2d at 983). Thus, in American Aviation, Inc. the Florida Supreme Court reiterated that the Moransais exception was limited to professional negligence claims.

After the Florida Supreme Court's decision in Moransais, several courts attempted to expand the Moransais holding to encompass causes of action for breach of fiduciary duty even where there was an underlying oral or written contract. See Invo. Fla., Inc. v. Somerset Venturer, Inc., 751 So.2d 1263, 1266 (Fla. Dist. Ct. App. 2000) (relying upon Moransais to hold that the economic loss rule did not bar a claim for breach of fiduciary duty even where there was an underlying contract); Performance Paint Yacht Refinishing, Inc. v. Haines, 190 F.R.D. 699, 701 (S.D. Fla. 1999) (applying Moransais and holding that a claim for breach of fiduciary duty was not barred under the economic loss rule).[2]  However, the Florida Supreme Court's discussion in American Aviation, Inc. cautions against such an expansive interpretation of Moransais. Specifically, the Florida Supreme Court stated:

> Although we limited our holding in Moransais to situations involving professional malpractice, we note that some courts have extended the exception to the application of the economic loss rule created in Moransais to causes of action for breach of fiduciary duty, even if there was an underlying oral or written contract. See Invo. Fla., Inc. v. Somerset Venturer, Inc., 751 So.2d 1263, 1266 (Fla. Dist. Ct. App. 2000; Performance Paint Yacht Refinishing, Inc. v. Haines, 190 F.R.D. 699, 701 (S.D. Fla. 1999). Several justices on this Court have supported expressly limiting the economic loss rule to its principled origins . . . We now agree that the economic loss rule should be expressly limited . . . we reiterate that when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain

---

[2]Notably, these cases pre-date the Florida Supreme Court's 2004 decision in American Aviation, Inc.  Therefore, the viability of these holdings is debatable.

a better bargain than it made by turning a breach of contract into a tort for economic loss.
American Aviation, Inc., 891 So.2d at 542.

Consequently, this Court will not venture to expand the Moransais exception or the doctrine of the economic loss rule.

In the case at bar, Plaintiffs have not alleged that Axa was a professional or engaged in the rendering of professional services, therefore, it appears that the limited exception created in Moransais is inapplicable to this case.  Moreover, Plaintiffs' claim for breach of fiduciary duty is based upon and inextricably intertwined with their claim for breach of contract.  For instance, in their claim for breach of fiduciary duty Plaintiffs alleged the same injury — their inability to receive the benefits allegedly due under the Policy — as they alleged in their claim for breach of contract.  See Compl. at ¶¶ 19-20, 24.  Similarly, the damages that Plaintiffs request for the alleged breach of fiduciary duty are the same damages that they requested in their breach of contract claim (i.e. payment of the $3,000,000.00 allegedly due under the Policy).  See id.  Thus, the breach of fiduciary duty claim is inextricably intertwined and dependent upon the breach of contract claim.  See Behrman, 388 F.Supp.2d at 1349; American Aviation, Inc, 891 So.2d at 536-44.  Therefore, Plaintiffs claim for breach of fiduciary duty must be dismissed.

## B.   PLAINTIFFS' CLAIM FOR BAD FAITH IS DISMISSED WITHOUT PREJUDICE

Next, Axa contends that Plaintiffs' claim for bad faith should be dismissed because an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved before a claim for bad faith in settlement negotiations can accrue.  In their opposition, Plaintiffs agreed to stay Count three until resolution of the breach of contract claim.

However, the Court finds that the bad faith claim should be dismissed without prejudice until the resolution of the breach of contract claim.

In the present action, the underlying coverage action has yet to be resolved, consequently, the issue of whether Axa is liable for the insurance claim has not been adjudicated.  If upon conclusion of the underlying coverage action Axa is found not liable for payment of the insurance claim, then Axa has not acted in bad faith in refusing to settle the claim.  Thus, a cause of action for failure to settle the claim in good faith is premature until the underlying coverage action is adjudicated.  See Blanchard v. State Farm Mutual Automobile Ins., Co., 575 So.2d 1289, 1291 (Fla. 1991) ("an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue.  It follows that an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits").  Therefore, Plaintiffs claim for bad faith is dismissed without prejudice.  Plaintiffs may raise this claim, if necessary, upon the conclusion of the underlying coverage action. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant Axa Equitable Life Insurance Company's Motion to Dismiss Counts II and III is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of December, 2006.

_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge

-10-

*Copies furnished to:*

*All Counsel of Record*